DECISION
Before the Court is Defendant Town of Burrillville's Motion to Dismiss Plaintiffs', Isabel and Belchior Pinto, complaint for failure to state a claim upon which relief can be granted, pursuant to R.C.P. 12(b)(6) or, in the alternative, Motion for Summary Judgment, pursuant to R.C.P. 56.
Facts and Travel
Plaintiffs filed a complaint against Defendant Town of Burrillville and Dimas and Manuel Oliviera on February 13, 1991 as a result of an injury that occurred at the Oliviera's home. Plaintiffs allege that while visiting the Oliviera's home on September 18, 1988, Isabel Pinto fell down the stairs leading to the basement and was injured. Plaintiffs claim that Isabel opened the door leading to the basement, mistaking it for the bathroom door, and fell. Plaintiffs' claims against the Olivieras have settled.
The claims against the Town of Burrillville arise out of the inspections and issuance of a certificate of occupancy by the town's building inspector. Plaintiffs allege that the basement door opened inward toward the basement and lacked a landing to the stairs. Plaintiffs further contend that the lack of a landing is a violation of Section R 213 the building code of the State of Rhode Island, which requires a 3 ft. x 3 ft. landing for doors opening toward the basement. Further, the owner of the home, Dimas Oliviera, testified that the Burrillville building officials failed to note or comment on the direction in which the door opened. Plaintiffs claim that the issuance of the certificate of occupancy by the building inspector was a direct and proximate cause of Isabel Pinto's injuries.
This matter was reached for trial on October 3, 1994. Defendant town filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) on immunity grounds, specifically the public duty doctrine. The parties agreed to postpone the trial, take the deposition of the former building inspector, George Gingell, and file memoranda with the Court. Mr. Gingell contends, in his deposition taken January 3, 1995, that the door to the basement opened outward and away from the basement in conformance with the state building code. For purposes of the motion, however, defendant will accept plaintiffs' allegations that the door opened towards the basement and that it is a violation of the code. Further, Gingell testified that he made routine inspections of the Oliviera home and was at the home several times. Gingell stated that the direction in which a door opens is covered by the inspections for the building permit and that pursuant to the building code, a door opening towards stairs must have a platform or must be changed to open into the living space. Gingell contends that if the door opened to the stairs without a landing, he would have noticed it.
Standard of Review
It is within the Court's discretion to treat a motion to dismiss for failure to state a claim upon which relief can be granted under R.C.P. 12(b)(6) as a motion for summary judgment pursuant to R.C.P. 56 if supported by materials outside of the pleadings. DiBello v. St. Jean, 106 R.I. 704, 264 A.2d 824 (1970). As this Court in its determination of defendant's present motion has considered the accompanying depositions of Gingell and Oliviera, it will treat the instant motion as one for summary judgment.
Summary judgment is a means of curtailing litigation when the Court finds that no genuine issue of material fact exists. TrendPrecious Metals v. Sammartino, 577 A.2d 986, 988 (R.I. 1990). In making its decision, the Court recognizes that summary judgment is a drastic remedy that should be cautiously applied. Rustigianv. Celona, 478 A.2d 187, 189 (R.I. 1984). The Court must examine the pleadings, affidavits, admissions, answers to interrogatories and other documents in the light most favorable to the party opposing the motion. O'Hara v. John Hancock Mutual LifeInsurance Co., 574 A.2d 135, 136 (R.I. 1990). Nevertheless, a litigant who seeks to oppose a motion for summary judgment has the burden of showing the existence of a disputed issue of material fact and cannot rest upon mere allegations in the pleadings. Industrial National Bank v. Patriarca, 502 A.2d 336, 338 (R.I. 1985). The trial justice may search for the existence of material issues of fact, but may not determine them.McPhillips v. Zayre Corp., 582 A.2d 747, 749 (R.I. 1990). In addition, the trial justice may not assess the weight or credibility of the evidence. Id. (Citing Doyle v. State,122 R.I. 590, 411 A.2d 907 (1980)).
The Public Duty Doctrine
Count III of plaintiffs' complaint alleges that the Town had a duty to plaintiffs in granting the certificate of occupancy to the Olivieras and that the Town was negligent in carrying out that duty. Count IV alleges that, as a result of the defendant's negligence, plaintiff Belchior Pinto has suffered a loss of consortium.
The doctrine of sovereign immunity with respect to tort claims against municipal corporations was abolished, subject to any limiting legislation enacted, by the case of Becker v.Bowdoin, 106 R.I. 562, 261 A.2d 896 (1970). The Legislature subsequently enacted G.L. 1956 (1985 Reenactment) § 9-31-1 et seq. which allows the State and its political subdivisions to be liable in tort. Nevertheless, the Rhode Island Supreme Court, in interpreting this statute, has consistently held that when the State or its political subdivisions perform activities in which individual citizens do not or could not engage, it will not be liable for the consequences of performing those activities.Orzechowski v. State, 485 A.2d 545, 549 (R.I. 1984).
In order for the State or its political subdivisions to be liable, the plaintiff must first show that the government was engaging in an activity that private individuals would perform.O'Brien v. State, 555 A.2d 334, 337 (R.I. 1989). If the Court determines that the activity in question is not ordinarily performed by private individuals, it will consider the public duty doctrine and its two exceptions, the existence of a special duty and egregious conduct. Houle v. Galloway School Lines,643 A.2d 822, 825-826 (R.I. 1994); Quality Court Condominium Assoc.v. Quality Hill Development Corp., 641 A.2d 746 (R.I. 1994).
The exceptions to the public duty doctrine are fact-intensive. Haley v. Town of Lincoln, 611 A.2d 845, 850 (R.I. 1992). Although a case in which the public duty doctrine is asserted as a defense is generally not proper for disposition by a Motion to Dismiss for failure to state a claim upon which relief can be granted or a Motion for Judgment on the pleadings, summary judgment may be used to dispose of cases that fall within the boundaries of the public duty doctrine. Id.
The activities engaged in by the town building inspector to ensure compliance with the state building code cannot be engaged in by private individuals. Id. at 750. Accordingly, the action that the Court reviews falls within the public duty doctrine. Absent a special duty or egregious conduct, the Town cannot be held liable.
A. Existence of a Special Duty
In order to establish the existence of a special duty, the plaintiffs must show that the government owed them a duty that was not owed the general public. Ryan v. State Department ofTransportation, 420 A.2d 841, 843 (R.I. 1985). In Quality CourtCondominium Assoc. v. Quality Hill Development, 641 A.2d 746, 750 (R.I. 1991), the Court found that a city building inspector owed certain inhabitants of a condominium complex a special duty where the inspector had several contacts with the same individuals in inspecting their units and had specific knowledge of irregularities within the units. The knowledge of the defects alone did not create the duty. The Court found that the following additional factors created a duty: (1) A representative of the city's building inspector's office was present at the site when the state building inspector made inspections and noted the violations; (2) the city building inspector was present at a meeting with the Attorney General's office where alternatives were discussed to remedy the problems with the condominiums; (3) the city building inspector met with the architect, the seller of the condominiums, and several unit owners to resolve the problems; (4) the city building inspector received a notice from the state building inspector regarding the specific building code violations; and (5) the city inspector returned several times to the condominiums to view the repair work, and then wrote a memorandum to his superior informing him that the units were in compliance with the building code.
Unlike the multiple contacts involved in Quality Court, the single inspection of the premises by a building inspector in the instant case does not support the requirements for the creation of a special duty. The duty does not run to the public at large. Instead, the governmental entity must know that a threat exists to the specific plaintiffs and must be involved with the work in more than a routine way. The local building official must be aware of the violations and make an effort to remedy the situation. The Court is careful to refrain from making a town or city a "general insurer of every construction project within its limits" through the imposition of liability for routine building inspections. Quality, 641 A.2d at 751.
In the present case, the plaintiffs have not made any allegations that would satisfy the threshold requirements to find a special duty. Arguably, the building inspector was aware of the violation regarding the door. However, the plaintiffs fail to raise issues of fact regarding the involvement of the town building inspector in the code violations. Routine inspections by a building inspector do not create a special duty. Id.
Accordingly, the Court finds as a matter of law that the Town did not owe the plaintiffs a special duty.
B. Egregious Conduct
The second exception to the public duty doctrine exists when the government engages in egregious conduct. The government engages in egregious conduct when "[it] has knowledge that it has created a circumstance that forces an individual into a position of permit and subsequently chooses not to remedy the situation."Bierman v. Shookster, 590 A.2d 402, 404 (R.I. 1991); Verity v.Danti, 585 A.2d 65, 67 (R.I. 1991). Three elements must be established in order to find that particular conduct is egregious: (1) the government entity in undertaking a discretionary action or failing to maintain the product of a discretionary action, created circumstances that forced a reasonably prudent person into a position of extreme peril; (2) the government entity, through its employees or agents capable of abating the danger, had actual or constructive knowledge of the perilous circumstances; and (3) the government entity, having been afforded a reasonable amount of time to eliminate the dangerous condition, failed to do so. Haley v. Town of Lincoln,611 A.2d 845, 849 (R.I. 1992).
The Court has found egregious conduct in the following two instances. In Bierman, the City of Providence failed to maintain an existing traffic signal in working order. Bierman v.Shookster, 590 A.2d 402, 404 (R.I. 1991). The Court here held that once the city decided to install the signal, it had a duty to keep it operational. Egregious conduct was also found where a